[No. A081569. First Dist., Div. Two. Sept. 1, 1998.]

CHRISTOPHER MORRISON et al., Plaintiffs and Appellants, v. VIACOM, INC., Defendant and Respondent.

COUNSEL

Joseph M. Alioto, John H. Boone, Michael E. Dietrick and Jon P. Rankin for Plaintiffs and Appellants.

Skadden, Arps, Slate, Meagher & Flom and James E. Lyons for Defendant and Respondent.

OPINION

HAERLE, J.—

## I. INTRODUCTION

This is the second appeal in this antitrust action against Viacom, Inc., a supplier of cable television, by several of Viacom's customers. In the first appeal, we held that the superior court erroneously sustained a demurrer to appellants' complaint because the antitrust claims alleged therein were only partially preempted by federal law regulating the cable industry. (*Morrison v. Viacom, Inc.* (1997) 52 Cal.App.4th 1514 [61 Cal.Rptr.2d 544] (*Morrison I*).)

After our ruling in *Morrison I*, the superior court sustained Viacom's motion for judgment on the pleadings on the ground appellants' original complaint, filed September 22, 1994, failed to allege a cause of action under the Cartwright Act. Thereafter, the trial court sustained a demurrer to the first amended complaint, filed August 29, 1997, on the same ground. In this appeal, appellants contend they have alleged sufficient facts to support their claim that Viacom's business practices constitute illegal tying, a per se violation of both section 16720 and 16727 of the Cartwright Act. (Bus. & Prof. Code, §§ 16720, 16727.) Alternatively, appellants argue the trial court abused its discretion by denying them leave to amend. We affirm.

## II. FACTS AND PROCEDURAL BACKGROUND

The first amended complaint alleges that appellants represent a class consisting of persons living in Marin, San Francisco and several East Bay communities who have purchased cable television from Viacom during the four-year period prior to the filing of the original complaint. Appellants contend Viacom has compelled members of the alleged class to participate in an illegal tying arrangement which has restrained trade "in the market for providing local broadcast television."

The "arrangement" appellants challenge is Viacom's organization of the cable channels it sells to its customers into three categories and its requirement that customers pay for certain categories to obtain access to others. According to appellants, Viacom has divided the channels into the following three categories: (1) broadcast channels, consisting of local television channels concurrently available over the noncable airwaves without charge, such as KGO, KPIX and KRON; (2) satellite cable channels, consisting of geographically remote broadcast television channels and nonbroadcast channels such as CNN and ESPN; and (3) premium channels, consisting of nonbroadcast channels such as HBO and Showtime.

The first amended complaint alleges that Viacom requires that a customer must purchase broadcast channels as a prerequisite for purchasing satellite cable channels and that he or she must purchase both broadcast channels and satellite cable channels in order to purchase premium channels. According to appellants these alleged requirements constitute a per se illegal tying arrangement; they claim Viacom has violated our state antitrust laws by illegally tying the sale of satellite channels to the sale of broadcast channels and the sale of premium channels to the sale of both broadcast and satellite channels.[1]

Appellants allege that they are unwilling coconspirators "coerced" by Viacom to participate in its illegal conspiracy to "boycott competing sources of television channels and to refuse to do business with entities providing other access to television channels." They claim they have suffered damage from the conspiracy because they were forced to purchase broadcast channels from Viacom even though (1) broadcast channels were "readily available . . . without charge over the airwaves," and (2) airwave reception of the broadcast channels interfered with cable reception of the broadcast channels and produced "multiple, 'ghost' images and otherwise impaired the reception of the broadcast channels."

The first amended complaint alleges that, if not for Viacom's tying arrangement, appellants would not have purchased broadcast channels from Viacom or any other cable company and that "[b]ut for the illegal tying arrangement alleged herein, [appellants] would have purchased television reception equipment and secured their television channels from competitors of [Viacom] thereby saving money."

---

[1]Appellants further allege that, to the extent Viacom's business practices violate the Cartwright Act, they also constitute unfair business practices within the meaning of section 17200 of the Business and Professions Code (hereafter section 17200.) We need not separately address the section 17200 claim as its validity depends on whether appellants have adequately alleged a cause of action under the Cartwright Act.

On December 1, 1997, the superior court sustained Viacom's demurrer to the first amended complaint·and denied appellants leave to amend. The basis for the lower court's order is readily discernible from the detailed tentative rulings it issued in this case. The court reasoned that appellants failed to state a claim under section 16727 of the Cartwright Act (Bus. & Prof. Code, § 16727 (hereafter § 16727)) because that provision does not apply when the alleged "tying" item is a service. Nor did appellants allege sufficient facts to constitute a violation of section 16720 of the Cartwright Act (Bus. & Prof. Code, § 16720 (hereafter § 16720)) because they failed to allege an adverse impact on competition in the tied product market or injury resulting from a restraint on competition in that market.

Judgment was entered on January 2, 1998, and, on January 30, 1998, appellants filed this timely appeal.

## III. DISCUSSION

Appellants contend they have adequately alleged facts to show that Viacom's tiering practice is a tying arrangement which constitutes a per se violation of sections 16720 and 16727. ■ "When reviewing a judgment based on an order sustaining a demurrer without leave to amend, we accept as accurate the factual allegations of appellants' complaint. [Citation.] If the complaint states a cause of action, the judgment must be reversed. [Citation.]" (*Morrison I, supra*, 52 Cal.App.4th at p. 1519.)

### A. *Tying May Constitute a Per Se Violation of the Cartwright Act*

■ The Cartwright Act prohibits combinations in restraint of trade. *(Bert G. Gianelli Distributing Co.* v. *Beck & Co.* (1985) 172 Cal.App.3d 1020, 1042 [219 Cal.Rptr. 203]; *Suburban Mobile Homes, Inc.* v. *AMFAC Communities, Inc.* (1980) 101 Cal.App.3d 532, 541 [161 Cal.Rptr. 811] *(Suburban Mobile Homes.)* Although the statutory language is all-encompassing, the courts have limited the Cartwright Act's reach to unreasonable restraints. Certain restraints which lack redeeming virtue are conclusively presumed to be unreasonable and illegal. Under certain conditions, which appellants have attempted to allege, tying constitutes such a per se illegal practice. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 853 [94 Cal.Rptr. 785, 484 P.2d 953]; *Suburban Mobile Homes, supra*, 101 Cal.App.3d at pp. 541-542.)

■ A tying arrangement is "a requirement that a buyer purchase one product or service as a condition of the purchase of another. [Citation.] Traditionally the product which is the inducement for the arrangement is

called the 'tying product' and the product or service that the buyer is required to purchase is the 'tied product.'" (*Classen* v. *Weller* (1983) 145 Cal.App.3d 27, 36 [192 Cal.Rptr. 914].) A tying arrangement may be condemned under either or both section 16720 and section 16727.

Section 16720 defines a trust as "a combination of capital, skill or acts by two or more persons" for the purpose of restraining trade. Except as expressly provided in the Cartwright Act, "every trust is unlawful, against public policy and void." (Bus. & Prof. Code, § 16726.) Federal law interpreting Sherman Antitrust Act section 1 (15 U.S.C. § 1) is useful when addressing issues arising under section 16720. (*State of California* ex rel. *Van de Kamp* v. *Texaco, Inc.* (1988) 46 Cal.3d 1147, 1164 [252 Cal.Rptr. 221, 762 P.2d 385], superseded by statute on other grounds as stated in *Stop Youth Addiction, Inc.* v. *Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 570 [71 Cal.Rptr.2d 731, 950 P.2d 1086]; *Biljac Associates* v. *First Interstate Bank* (1990) 218 Cal.App.3d 1410, 1420-1421 [267 Cal.Rptr. 819].)[2]

Section 16727 provides that it is unlawful for any person to sell or contract "for the sale of goods, merchandise, machinery, supplies, commodities . . . on the condition, agreement or understanding that the . . . purchaser thereof shall not use or deal in the goods, merchandise, machinery, supplies, commodities, or services of a competitor or competitors of the . . . seller, where the effect . . . may be to substantially lessen competition or tend to create a monopoly in any line of trade or commerce in any section of the State." Section 16727, added to the Cartwright Act in 1961, was patterned after section 3 of the federal Clayton Act, and cases interpreting Clayton Act section 3 are applicable when construing section 16727. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.*, *supra*, 4 Cal.3d at pp. 852-853; *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 315 [70 Cal.Rptr. 849, 444 P.2d 481]; *Bert G. Gianelli Distributing Co.* v. *Beck & Co.*, *supra*, 172 Cal.App.3d at p. 1050.)

█ The elements of a per se tying arrangement violative of section 16720 are: "(1) a tying agreement, arrangement or condition existed whereby

---

[2]Many cases state that section 16720 was patterned after section 1 of the Sherman Act and that federal law construing section 1 is applicable to.resolve problems arising under section 16720. (See, e.g., *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.*, *supra*, 4 Cal.3d at p. 852; *Marin County Bd. of Realtors, Inc.* v. *Palsson* (1976) 16 Cal.3d 920, 925 [130 Cal.Rptr. 1, 549 P.2d 833] (*Palsson*); *Bert G. Gianelli Distributing Co.* v. *Beck & Co.*, *supra*, 172 Cal.App.3d at p. 1042; *Suburban Mobile Homes*, *supra*, 101 Cal.App.3d at p. 540.) However, in *State of California* ex rel. *Van de Kamp* v. *Texaco, Inc.*, *supra*, 46 Cal.3d at page 1168, our Supreme Court stated that "the Sherman Act is not, contrary to our past statements, directly probative on interpretation of the Cartwright Act." Though not always directly probative of the Cartwright Act drafters' intent, judicial interpretations of the Sherman Act are, nevertheless, often helpful because of the similarity in language and purpose between the federal and state statutes. (*Id.* at p. 1164; *Biljac Associates* v. *First Interstate Bank*, *supra*, 218 Cal.App.3d at pp. 1420-1421.)

the sale of the tying product was linked to the sale of the tied product or service; (2) the party had sufficient economic power in the tying market to coerce the purchase of the tied product; (3) a substantial amount of sale was affected in the tied product; and (4) the complaining party sustained pecuniary loss as a consequence of the unlawful act. [Citations.]" (*Classen* v. *Weller, supra*, 145 Cal.App.3d at pp. 37-38; see also *MacManus* v. *A.E. Realty Partners* (1983) 146 Cal.App.3d 275, 286 [194 Cal.Rptr. 567]; cf. *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc., supra*, 4 Cal.3d at pp. 856-857; see generally, Fontana & Hunsader, *Application of the California Cartwright Act to Vertical Restraints* (PLI 1989) 659 Corp. 655.)

Under section 16727, a per se violation is established if *either* element (2) or (3) is established along with elements (1) and (4). (*Classen* v. *Weller, supra*, 145 Cal.App.3d at p. 37; *Suburban Mobile Homes, supra*, 101 Cal.App.3d at pp. 549-550; see also *People* v. *National Association of Realtors* (1984) 155 Cal.App.3d 578, 583 [202 Cal.Rptr. 243].)

B. *Appellants Have Not Alleged a Violation of Section 16720*

The trial court found the amended complaint does not sufficiently allege element (3) set forth above, i.e., that a substantial amount of sale was affected in the tied product for local broadcast television. To plead this element, appellants must allege facts to show that " 'a total amount of business, substantial enough in terms of dollar-volume so as not to be merely *de minimis*, is foreclosed to competitors by the tie.' " (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc., supra*, 4 Cal.3d at pp. 856-857; *Kim* v. *Servosnax, Inc.* (1992) 10 Cal.App.4th 1346, 1361 [13 Cal.Rptr.2d 422].)

The amended complaint alleges that "[i]n each and every market that Defendants did business, Defendants were the dominant if not sole provider of satellite television such that Defendant [*sic*] had sufficient economic power to impose an appreciable restraint on free competition in the market for local broadcast television." However, appellants failed to allege any facts which, if proven, would establish that there was any actual effect on competition *in the tied product market for local broadcast television*. Indeed, the facts appellants *do* allege are inconsistent with establishing there was any such effect.[3]

---

[3]At oral argument, appellants' counsel argued for the first time during this appeal that there are two tied product markets in this case, i.e., that "cable programming" is the tied product with respect to some of the activities challenged in the first amended complaint.

As we have noted, the first amended complaint does allege that Viacom customers are required to purchase satellite cable channels in order to purchase premium channels. However, appellants have clearly failed to allege sufficient facts to support a claim that Viacom

Appellants define the tied product (broadcast television) as "local broadcast television channels which were concurrently available to Plaintiff without charge over the airwaves." They contend Viacom compelled them to purchase the tied product "even though Plaintiff neither needed nor desired to purchase from Defendants or any other cable company, that which is readily available to plaintiff without charge over the air waves."

Appellants have failed to plead the requisite tied product market foreclosure because they do not allege that plaintiffs would have purchased the broadcast channels from someone else if not forced to buy them from Viacom. Indeed, appellants have not even alleged sufficient facts to show that Viacom has competitors in the tied product market. A transaction cannot restrain trade when no competitor exists from whom to purchase the tied product. (See *MDC Data Centers, Inc.* v. *International Bus. Mach. Corp.* (E.D.Pa. 1972) 342 F.Supp. 502, 505.)

More devastating to their case is appellants' concession in their pleading that, if not for Viacom's business practice, plaintiffs would not buy broadcast channels at all because they are available for free over the airwaves. This concession establishes that the challenged practice has no effect on competition in the tied product market. ■ The United States Supreme Court articulated the applicable rule in *Jefferson Parish Hospital Dist. No. 2* v. *Hyde* (1984) 466 U.S. 2, 16 [104 S.Ct. 1551, 1560, 80 L.Ed.2d 2]. The court stated: "[W]hen a purchaser is 'forced' to buy a product he would not

illegally ties their premium cable service to their satellite cable service. Not only have appellants failed to allege injury to competition in the satellite cable market or damage to them resulting from such an injury, they have not even alleged facts to establish that satellite channels and premium channels constitute distinct product markets.

The first amended complaint also alleges that, at some unspecified time in the past, Viacom required that customers purchase satellite cable channels in order to purchase broadcast channels, but that Viacom discontinued this practice "[a]t some time prior to the initiation of this action." Since this alleged practice was not at issue in the lower court and is never even mentioned in the appellate briefs, we assumed that appellants had abandoned any plan they may have had to use this alleged business practice as a basis of an antitrust claim against Viacom. However, in light of appellants' counsel's reference at oral argument to a tied product market consisting of cable programming, we note just a few reasons why allegations regarding Viacom's former practice of requiring customers to purchase broadcast channels in order to purchase satellite channels do not state an antitrust cause of action: (1) the first amended complaint does not allege that Viacom engaged in this practice during the four-year period prior to the filing of the original complaint in this action; (2) there is no allegation that this alleged practice restrained trade in the market for satellite cable channels; (3) appellants have not alleged any injury resulting from restraint on competition in the market for satellite cable television; (4) there is no allegation that Viacom has or had sufficient market power in the broadcast television market to coerce a sale in the satellite cable market. (Indeed, with respect to this last point, appellants implicitly concede they were not coerced to purchase satellite channels in order to obtain broadcast channels by admitting that broadcast channels are transmitted over the airwaves free of charge.)

have otherwise bought even from another seller in the tied-product market, there can be no adverse impact on competition because no portion of the market which would otherwise have been available to other sellers has been foreclosed." (*Ibid.*) Phillip Areeda explains the rule this way: "When all buyers are forced to take a tied product they do not want and would not have purchased elsewhere, tied-market foreclosure is zero and thus does not satisfy even the minimal requirements for per se illegality." (10 Areeda et al., Antitrust Law (1996) ¶ 1769e1, pp. 439-440.)

Perhaps as an attempt to counteract the effect of their concession, appellants attempted, in their first amended complaint, to shift the focus of this case from broadcast channels themselves to the means by which those channels are transmitted to customers. They added to the most recent version of their complaint allegations that Viacom coerced consumers into "joining an illegal conspiracy to boycott competing sources of television channels and to refuse to do business with entities providing other access to television channels" and that, "[b]ut for the illegal tying arrangement alleged herein, Plaintiffs would have purchased television reception equipment and secured their television channels from competitors of Defendants thereby saving money." Apparently, appellants intended for these additional allegations to show there are other entities that compete with Viacom to provide consumers access to broadcast television. The only competitors alluded to in the amended complaint are suppliers of television reception equipment, i.e., television antennae.

The trial court found that the amended complaint fails to allege facts to show that cable television services are in the same market with television antennae. In this court, appellants maintain that the tied product market is not the cable television services market but rather the market for "providing local broadcast television programming" and that suppliers of television antennae and others are in that market.

There are at least two problems with appellants' argument. First, the first amended complaint does not allege any facts to show that there are any competitors in appellants' proposed alternative tied product market for providing local broadcast television. Sellers of "television reception equipment" do not provide television. They supply a product which surely may help improve the *quality* of television reception, but antennae purchased by consumers to improve reception do not, by definition, transmit or supply broadcast television to customers.

Second, and more fundamentally, appellants' proposed alternative characterization of the tied product market is inconsistent with the basic premise of

this lawsuit, i.e., that Viacom makes its customers *purchase the broadcast channels* themselves in order to receive satellite and premium channels. The alleged tying arrangement does not involve the tangible equipment or means that Viacom uses to physically transmit cable to its customers. The amended complaint contains no allegation or suggestion that Viacom requires its customers to purchase different equipment to access each tier of service. Rather, the implicit message of appellants' complaint is that it is unfair for Viacom to require customers who have paid for Viacom's cable equipment to be required to pay for certain programs before they can watch other programs. Since the alleged tying arrangement pertains to the pricing and access requirements of Viacom's tiered programming, and not to the tangible means Viacom uses to deliver those programs to customers, the tied product market must be broadcast television itself and not the physical method by which broadcast television (as well as satellite and premium channels) are delivered.

The amended complaint does not allege that anyone else aside from Viacom *sells* broadcast channels to consumers (i.e., as distinguished from providing them for free over the airwaves). As discussed above, television antenna suppliers do not compete in the tied product market since they do not sell broadcast channels. The only other potential competitors appellants identify in their appellate briefs are microwave systems and satellite systems. But appellants do not allege that suppliers of these systems offer broadcast television as a distinct service. Further, appellants have not and cannot seriously contend that any Viacom customer would also purchase a microwave or satellite system in order to obtain broadcast channels if not required to purchase broadcast channels from Viacom. Microwave and satellite systems may offer consumers a total package alternative to Viacom's comprehensive service, but we have been provided with no information indicating they are or could be competitors in the local broadcast television market.

Appellants contend the trial court abused its discretion by denying them leave to amend to clarify and/or refine their tied product market definition. When a demurrer is "sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

As the foregoing analysis illustrates, appellants have not established a reasonable possibility that the defect in their pleadings is curable.

They have not identified any facts to show that Viacom has any competitors in the tied product market and they continue to allege that the tied product is available for free. Under these circumstances, Viacom's conduct could not have foreclosed competition in the tied product market. Therefore, the superior court did not abuse its discretion by denying appellants leave to again amend.

### C. *Appellants Have Not Alleged a Violation of Section 16727*

The trial court sustained the demurrer with respect to appellants' section 16727 claim on the ground that that section does not apply when the tying item is a service. The complaint alleges that the tying item is satellite and/or premium channels; that, in order to obtain satellite and or premium cable channels, Viacom coerces customers to purchase broadcast channels. Appellants contend the trial court's ruling was erroneous; that section 16727 does apply when the tying item is a service.

Appellants ignore the language of section 16727, which supports the trial court's conclusion. The statute provides that a sale or contract for sale of *"goods, merchandise, machinery, supplies, commodities"* is unlawful when conditioned on the agreement that the purchaser "shall not use or deal in the *goods, merchandise, machinery, supplies, commodities, or services* of a competitor or competitors." The term "services" is used to describe tied items and is not used to describe tying items.

Although we have found no California authority directly on point, this court has stated in dicta that section 16727 does not apply when the tying item is a service. (*Suburban Mobile Homes, supra,* 101 Cal.App.3d at p. 550.) In *Suburban Mobile Homes,* the plaintiff was a mobilehome dealer who alleged that several other dealers and a mobilehome park owner established an illegal tying arrangement by restricting use of a significant portion of the mobilehome park to tenants who bought their mobilehomes from the dealer defendants (who then shared proceeds from those sales with the defendant mobilehome park owner). We held that the trial court erred by granting the defendants' motion for nonsuit with respect to the plaintiff's section 16720 claim but affirmed the nonsuit as to its section 16727 claim.

In *Suburban Mobile Homes,* we recognized that section 16727 is based on section 3 of the Clayton Act and we applied federal law construing that act to hold that section 16727 does not apply when the tying item is land. (*Suburban Mobile Homes, supra,* 101 Cal.App.3d at p. 549.) Specifically, we acknowledged the federal rule that " '[i]f the tie does not involve a commodity but concerns land, services or credit which do not fit the Clayton Act's

language, it is governed by the Sherman Act and the plaintiff is required to bear the additional burden of proving that the defendant's economic power with respect to the tying product is sufficient to produce an appreciable restraint.' " (*Id.* at p. 550, quoting *N.W. Controls, Inc.* v. *Outboard Marine Corporation* (D.Del. 1971) 333 F.Supp. 493, 500, italics omitted.) By finding this rule dispositive, we implicitly acknowledged that (1) section 16727's definition of commodity, like the definition applicable to the Clayton Act, does not include land, *services* or credit, and (2) neither land, *services* nor credit fits section 16727's language describing the tying product.

Appellants contend that our Supreme Court defined commodity to include services in *Palsson, supra,* 16 Cal.3d 920. In *Palsson,* the Supreme Court held that a county board of realtors violated section 16720 and 16726 of the Cartwright Act by "limiting its membership to persons primarily engaged in the real estate business and by denying nonmembers access to its multiple listing service." (16 Cal.3d at p. 924.) In reaching this conclusion, the court rejected the argument that the Cartwright Act is concerned primarily with problems relating to merchandise or commodities and does not apply to services. The court relied heavily on federal law establishing that the Sherman Act applies to activities of real estate brokers. (*Id.* at pp. 925-927.) The court rejected an inhibiting interpretation of the term "commodity," reasoning that the broad and comprehensive language of section 16720 prohibiting "restrictions in trade or commerce" compelled its application to service industries. (16 Cal.3d at pp. 927-928.)

As the trial court in the present case recognized, and as we stated in *Suburban Mobile Homes,* in *Palsson* the word "commodity" was interpreted under section 16720, which the *Palsson* court characterized as the equivalent of section 1 of the Sherman Act. (*Palsson, supra,* 16 Cal.3d at p. 925.) The *Palsson* analysis does not apply to section 16727 "which is governed by the Clayton Act and the case interpretation thereunder." (*Suburban Mobile Homes, supra,* 101 Cal.App.3d at p. 550.)

In an apparent attempt to portray the alleged tying item as a commodity, appellants have deleted the term "service" from their amended complaint and characterize the tying product markets as the markets for providing cable television. However, appellants cite no authority (nor have we found any) to support their characterization of cable television as a commodity rather than a service. Indeed, applicable federal authority construing the parallel provision of Clayton Act section 3 establishes that cable television is a service and not a commodity. (*Satellite T Assoc.* v. *Continental Cablevision of Va.* (E.D.Va. 1982) 586 F.Supp. 973, 975-976; *Rankin Cty. Cablevision* v.

*Pearl River Val. Water* (S.D.Miss. 1988) 692 F.Supp. 691, 693; see also *TV Communications Network, Inc.* v. *ESPN, Inc.* (D.Colo. 1991) 767 F.Supp. 1062, 1076 [cable is a service and not a commodity under section 2 of the Clayton Act]; *Gall* v. *Home Box Office, Inc.* (S.D.N.Y. 1992) 1992 WL 230245 [same].)

The foregoing authority confirms the superior court's conclusion that appellants have failed to state a cause of action under section 16727 because the alleged tying product in this case, cable television, is a service and section 16727 does not apply when the tying product is a service.

### D. *Appellants Have Failed to Adequately Allege Antitrust Injury*

■ The trial court found that appellants "have still alleged no facts to show an injury *from restraints on competition.*" We conclude this finding was an appropriate alternate ground for sustaining Viacom's demurrer to both of appellants' Cartwright Act claims.

"The plaintiff in a Cartwright Act proceeding must show that an antitrust violation was the proximate cause of his injuries. [Citation.] . . . An 'antitrust injury' must be proved; that is, the type of injury the antitrust laws were intended to prevent, and which flows from the invidious conduct which renders defendants' acts unlawful. [Citations.]" (*Kolling* v. *Dow Jones & Co.* (1982) 137 Cal.App.3d 709, 723 [187 Cal.Rptr. 797].)

Appellants allege that the fact that they are not competitors of Viacom does not prevent them from establishing antitrust injury. Although we agree (see *Saxer* v. *Philip Morris, Inc.* (1975) 54 Cal.App.3d 7, 26 [126 Cal.Rptr. 327]), appellants completely miss the point. Appellants failed to allege antitrust injury not because they are customers rather than competitors of Viacom, but because they have failed to allege any facts to show they suffered an injury which was *caused* by restraints on competition.

The pecuniary injury alleged in the first amended complaint is that appellants were forced to purchase broadcast channels from Viacom even though broadcast channels were "readily available . . . without charge over the airwaves." We have already explained why forcing a consumer to buy something that he or she would not buy elsewhere does not injure competition; if the buyer would not have purchased the tied product elsewhere, the challenged business practice could not have foreclosed competition in the tied product market. For the same reason, the buyer has not suffered antitrust injury. "[S]uch buyers are not injured in fact, for this tie simply increases the effective price of the tying product. If that effective price exceeds the market

price, no one would patronize the tying seller; if it does not, the effective price paid the defendant is the market price for his product. Hence, these buyers can claim neither per se illegality nor injury-in-fact." (10 Areeda et al., Antitrust Law, *supra*, ¶ 1769e1, p. 440, fn. omitted.)

In their opening brief to this court, appellants suggest that their injury was not simply paying too high a price for Viacom's cable programming but that they could have actually paid a lower price to obtain local broadcast television programming by alternative means. But, as we have already explained, appellants have not alleged or stated in their briefs any facts to show that there is an alternative means of purchasing local broadcast television. The only allegation bearing on this issue, an allegation we believe is dispositive, is appellants' concession that local broadcast television is transmitted over the airwaves free of charge. In light of this concession, the real injury about which appellants complain is that Viacom has inflated its cable rates by requiring that customers pay a fee for broadcast television even though broadcast television is available to other consumers for free. This practice may implicate rate regulations but it does not constitute an anticompetitive tying arrangement.

## IV. DISPOSITION

The judgment is affirmed.

Kline, P. J., and Lambden, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 18, 1998.