182 Cal.App.4th 247 (2010)
JOEL DRUM, Plaintiff and Appellant,
v.
SAN FERNANDO VALLEY BAR ASSOCIATION, Defendant and Respondent.
No. B217578.
Court of Appeals of California, Second District, Division Five.
February 24, 2010.
*250 Joel Drum, in pro. per., for Plaintiff and Appellant.
Nemecek & Cole, Jonathan B. Cole and Mark Schaeffer for Defendant and Respondent.

OPINION
MOSK, J.

INTRODUCTION
We hold that a voluntary bar association did not engage in an unfair business practice in violation of the California unfair competition law (Bus. & Prof. Code, § 17200 et seq.)[1] (UCL) when, allegedly, it unilaterally refused to sell its membership mailing list to a person who intended to offer low-priced mediation services in competition with higher priced mediation services offered by some of the association's members. We therefore affirm the judgment of dismissal, entered after the trial court sustained the association's demurrer.

*251 BACKGROUND
Plaintiff and appellant Joel Drum (plaintiff) alleged that he was a disbarred attorney who intended to offer his services as a mediator at relatively low prices. He wished to solicit members of defendant and respondent San Fernando Valley Bar Association (Association), a voluntary bar association, to engage his mediation services. Plaintiff attempted to purchase from the Association its membership mailing list, which the Association sells to businesses that offer products or services of interest to its members. The Association refused to sell the list to plaintiff, ostensibly on the ground that plaintiff had been disbarred. Plaintiff alleged that this reason was a pretext, and that the Association's true reason for refusing to sell him the list was to protect its members who were mediators from price competition. Plaintiff alleged that this was an unfair business practice in violation of the UCL, and sought a mandatory injunction requiring the Association to sell its mailing list to him.
The Association demurred. The trial court sustained the demurrer with leave to amend on the ground that plaintiff had failed to allege facts sufficient to state a claim. Plaintiff elected not to amend. The trial court entered a judgment of dismissal and plaintiff timely appealed.

DISCUSSION
In reviewing the sufficiency of a complaint against a demurrer, we accept as true all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) When, as here, "a plaintiff is given the opportunity to amend his complaint and elects not to do so, strict construction of the complaint is required and it must be presumed that the plaintiff has stated as strong a case as he can." (Gonzales v. State of California (1977) 68 Cal.App.3d 621, 635 [137 Cal.Rptr. 681], disapproved on another ground in City of Stockton v. Superior Court (2007) 42 Cal.4th 730, 740 [68 Cal.Rptr.3d 295, 171 P.3d 20]; see also Reynolds v. Bement (2005) 36 Cal.4th 1075, 1091 [32 Cal.Rptr.3d 483, 116 P.3d 1162]; Alfaro v. Community Housing Improvement System & Planning Assn., Inc. (2009) 171 Cal.App.4th 1356, 1372 [89 Cal.Rptr.3d 659].) In these circumstances, we will affirm the judgment if the complaint is objectionable on any ground raised in the demurrer. (Gutkin v. University of Southern California (2002) 101 Cal.App.4th 967, 981 [125 Cal.Rptr.2d 115]; Soliz v. Williams (1999) 74 Cal.App.4th 577, 585 [88 Cal.Rptr.2d 184].)
*252 (1) The purpose of the UCL "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. [Citation.]" (Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, 949 [119 Cal.Rptr.2d 296, 45 P.3d 243] (Kasky); see McKell v. Washington Mutual, Inc. (2006) 142 Cal.App.4th 1457, 1470 [49 Cal.Rptr.3d 227].) The UCL "defines `unfair competition' to mean and include `any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law (§ 17500 et seq.)].' (§ 17200.)" (Kasky, supra, 27 Cal.4th at p. 949.) Whether a plaintiff has standing to sue under the UCL and whether an alleged business practice violated the UCL both may be resolved at the demurrer stage in appropriate cases. (See, e.g., Citizens of Humanity, LLC v. Costco Wholesale Corp. (2009) 171 Cal.App.4th 1, 22 [89 Cal.Rptr.3d 455] [failure to plead standing]; Davis v. Ford Motor Credit Co. LLC (2009) 179 Cal.App.4th 581, 598 [101 Cal.Rptr.3d 697] (Davis) [failure to allege unfair business practice]; Gregory v. Albertson's, Inc. (2002) 104 Cal.App.4th 845, 857 [128 Cal.Rptr.2d 389] (Gregory) [failure to allege substantive UCL violation].)

A. Standing

(2) In his reply brief on appeal, plaintiff conceded that he had failed to allege adequately damagesthat is, that he "suffered injury in fact and has lost money or property as a result of the unfair competition." (§ 17204.) Plaintiff did not allege that he lost or expended or was denied any money or property as the result of the Association's refusal to sell him its membership mailing list. Plaintiff thus failed to allege facts showing his standing under section 17204 to prosecute an action under the UCL. (Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court (2009) 46 Cal.4th 993, 1000 [95 Cal.Rptr.3d 605, 209 P.3d 937]; Californians for Disability Rights v. Mervyn's, LLC (2006) 39 Cal.4th 223, 228-229 [46 Cal.Rptr.3d 57, 138 P.3d 207]; Hall v. Time Inc. (2008) 158 Cal.App.4th 847, 852-855 [70 Cal.Rptr.3d 466] [injury in fact may not be "conjectural" or "hypothetical"; injury occurs when the plaintiff expends money, loses money or property, or is denied money to which it has cognizable claim]; see also Buckland v. Threshold Enterprises, Ltd. (2007) 155 Cal.App.4th 798, 817 [66 Cal.Rptr.3d 543] [remedies for a person under the UCL "are restricted to injunctive relief and restitution"]; Korea Supply Co. v. Lockheed Martin Corp. (2003) 29 Cal.4th 1134, 1151 [131 Cal.Rptr.2d 29, 63 P.3d 937] ["`Compensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims.'"]; Stern, Bus. & Prof.C. § 17200 Practice (The Rutter Group 2009) ch. 7C., pp. 7-23 to 7-28 (rev. # 1, 2009).) Although the standing issue *253 was not raised in defendant's notice of demurrer[2] or addressed by the trial court, a plaintiff's standing to sue is a threshold issue to be resolved before reaching the merits and may be raised at any time in the proceedings, including on appeal. (Buckland v. Threshold Enterprises, Ltd., supra, 155 Cal.App.4th at p. 813.)
Plaintiff has requested of this court that he be allowed to amend his complaint to plead facts sufficient to establish his standing, although he has not stated what he would allege. (See Medina v. Safe-Guard Products, Internat., Inc. (2008) 164 Cal.App.4th 105, 112-113, fn. 8 [78 Cal.Rptr.3d 672] [burden on plaintiff to show how complaint would be amended to state a cause of action].) But because plaintiff also failed to plead a substantive violation of the UCL (pt. B, post), we need not address plaintiff's request for leave to amend with regard to standing.

B. Failure to Allege Violation of UCL

(3) Plaintiff failed to allege facts sufficient to state a cause of action under the UCL. A voluntary bar association's unilateral refusal to sell its membership list to any particular buyer, even if the association's reason was to protect some of its members from price competition, is not an "unlawful, unfair or fraudulent business act or practice" under the UCL (§ 17200).
(4) In Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163 [83 Cal.Rptr.2d 548, 973 P.2d 527] (Cel-Tech), the California Supreme Court held that the UCL "`establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent. "In other words, a practice is prohibited as `unfair' or `deceptive' even if not `unlawful' and vice versa."' [Citation.]" (Cel-Tech, at p. 180.) In this case, plaintiff does not argue that the Association's refusal to sell its membership mailing list to him was "deceptive" or "unlawful"; he argues only that it was "unfair." The UCL, however, does not define the term "unfair," and "`courts have struggled to come up with a workable definition.'" (Davis, supra, 179 Cal.App.4th at pp. 593-594, quoting Gregory, supra, 104 Cal.App.4th at p. 851.)
There is authority that the test to determine whether a business practice is unfair differs depending on whether the plaintiff in a UCL case is a competitor of the defendant or a consumer. (See, e.g., Cel-Tech, supra, 20 Cal.4th at p. 187, fn. 12 [differentiating between competitor and consumer claims]; Bardin v. DaimlerChrysler Corp. (2006) 136 Cal.App.4th 1255, *254 1273-1274 [39 Cal.Rptr.3d 634] (Bardin) [same].) It is unclear which test would apply in this case. On the one hand, plaintiff does not compete with the Association, and he would be a "consumer" of the Association's mailing list if he were permitted to buy it. On the other hand, plaintiff alleged that the motive and effect of the Association's conduct was to hinder his ability to compete with the Association's members in the market for mediation services. We need not decide whether plaintiff was a competitor or consumer, however, because in either case he failed to allege facts showing that the Association's conduct was "unfair."
(5) In competitor cases, a business practice is "unfair" only if it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (Cel-Tech, supra, 20 Cal.4th at p. 187.) If "the conduct is deemed reasonable and condoned under the antitrust laws," there is no violation of the UCL. (Chavez v. Whirlpool Corp. (2001) 93 Cal.App.4th 363, 375 [113 Cal.Rptr.2d 175] [manufacturer's refusal to sell to retailers who did not comply with minimum retail price policy not unfair under UCL]; see also People's Choice Wireless, Inc. v. Verizon Wireless (2005) 131 Cal.App.4th 656, 668-672 [31 Cal.Rptr.3d 819] [cellular telephone company's refusal to sell new cell phone models to independent retailers during holdback period not unfair under UCL].)
(6) Plaintiff failed to allege a claim under the competitor test. (Cel-Tech, supra, 20 Cal.4th at p. 187.) Absent a legal provision to the contrary, a private party generally may choose to do or not to do business with whomever it pleases. "[U]nless there is an exception, the right to refuse to deal remains sacrosanct" and "the mere refusal to deal does not violate the spirit or policy of antitrust law." (People's Choice Wireless, Inc. v. Verizon Wireless, supra, 131 Cal.App.4th at p. 667; see also United States v. Colgate & Co. (1919) 250 U.S. 300, 307 [63 L.Ed. 992, 39 S.Ct. 465]; SC Manufactured Homes, Inc. v. Liebert (2008) 162 Cal.App.4th 68, 83 [76 Cal.Rptr.3d 73]; Chavez v. Whirpool Corp., supra, 93 Cal.App.4th at p. 370; see also Scripps Clinic v. Superior Court (2003) 108 Cal.App.4th 917, 935-936, 940 [134 Cal.Rptr.2d 101] [not unfair to refuse to provide services to consumer when refusal did not involve an agreement in restraint of trade]; see generally 2 Callmann on Unfair Competition, Trademarks and Monopolies (4th ed. 1982) § 10:3, pp. 10-18 to 10-30 (rev. 5/2003).) Plaintiff does not contend that any legal provision required the Association to sell its membership mailing list to anyone. To the contrary, at plaintiff's request, the trial court took judicial notice of the Association's Web site, which stated that the sale of the membership mailing list to any particular buyer was subject to the Association's approval.
*255 (7) Plaintiff argues that he adequately alleged that the Association's conduct was unfair under the UCL because he alleged that the Association's motive for refusing to sell him the mailing list was "to [prevent] him from `undercutting' those members who provide mediation services at a far higher price." Accepting that allegation as trueas we mustit was nevertheless insufficient. Plaintiff cites no authority that it is unfair under the UCL for a voluntary professional association to use otherwise lawful means to protect the interests of its members in maintaining prices. Generally, independent action by a market participant does not violate either the antitrust laws or the UCL, even if that action affects prices. (See § 16720, subd. (e)(2)-(4) [defining illegal "trust" as, inter alia, agreements among two or more persons to fix, maintain, establish or affect prices]; Scripps Clinic v. Superior Court, supra, 108 Cal.App.4th 917, 935 ["The Cartwright Act, like the federal Sherman Act (15 U.S.C. § 1), does not proscribe independent action."]; Chavez v. Whirlpool Corp., supra, 93 Cal.App.4th at p. 372 [manufacturer's unilateral "resale price policy and its refusal to deal with dealers who do not comply coupled with the dealers' voluntary acquiescence in the policy does not constitute an implied agreement or an unlawful combination as a matter of law"]; id. at pp. 374-375 [that a unilateral resale price policy is "not an unreasonable restraint of trade necessarily implies that the conduct is not `unfair' toward consumers" under the UCL].)
(8) In this case, plaintiff did not allege that the Association entered into any agreement, combination or conspiracy to fix prices for mediation services. (See Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 49 [77 Cal.Rptr.2d 709, 960 P.2d 513] ["While refusing to sell a product to a consumer does not itself violate the Cartwright Act, when that refusal is the result of a combination, agreement, or conspiracy to make that product unavailable in a given market a prohibited restraint of trade may be found."].) "Only separate entities pursuing separate economic interests can conspire within the proscription of the antitrust laws against price fixing combinations. (Copperweld Corp. v. Independence Tube Corp. (1984) 467 U.S. 752, 769-771 [81 L.Ed.2d 628, 104 S.Ct. 2731, 2740-2742] . . . .)" (Freeman v. San Diego Assn. of Realtors (1999) 77 Cal.App.4th 171, 189 [91 Cal.Rptr.2d 534].)[3] "A general demurrer [to an allegation of price fixing] will be sustained where the complaint makes conclusory allegations of a combination and does not allege with factual particularity that separate entities maintaining separate and independent interests combined for the purpose to restrain trade." (Freeman, at p. 189.) (9) Plaintiff alleged no facts to suggest that the Association was anything other than an independent economic unit in *256 providing support services for its members. (See Freeman v. San Diego Assn. of Realtors, supra, 322 F.3d at p. 1149.) There was no allegation that the Association has imposed any price controls on its members, or that the Association's members have abided by such price controls, or that plaintiff was a member of the Association or otherwise was competitively disadvantaged by any such price controls. (See Goldfarb v. Virginia State Bar (1975) 421 U.S. 773, 781-782 [44 L.Ed.2d 572, 95 S.Ct. 2004] [county bar association's schedule fixing fees for legal services that member attorneys complied with constituted illegal price-fixing agreement].) Nor did plaintiff allege that the Association has monopolized the market for mediation services in the San Fernando Valley, or that it has attempted or entered into a conspiracy to do so. There was no allegation, nor can one infer from the complaint, that the Association's refusal to sell plaintiff its mailing list significantly threatened or harmed competition. (See Cel-Tech, supra, 20 Cal.4th at pp. 186-187.) Plaintiff thus failed to allege a claim under the competitor test.
(10) In consumer cases, the Supreme Court has not established a definitive test to determine whether a business practice is unfair. (See Cel-Tech, supra, 20 Cal.4th at p. 187, fn. 12 [stating that test for unfairness in competitor cases is "limited to that context" and does not "relate[] to actions by consumers"].) Subsequent to the decision in Cel-Tech, a split of authority developed among the Courts of Appeal, which have applied three different tests for unfairness in consumer cases. (See generally Davis, supra, 179 Cal.App.4th at pp. 593-598 [tracing post-Cel-Tech split in authority among Courts of Appeal in consumer cases]; Bardin, supra, 136 Cal.App.4th at p. 1267 [noting split of authority]; Stern, Bus. & Prof.C. § 17200 Practice, supra, ¶¶ 3:118 to 3:121 (rev. # 1, 2009) [discussing definition of "unfair" in post-Cel-Tech consumer cases].) Plaintiff failed to allege a claim under any of these three tests.
The test applied in one line of cases is similar to the Cel-Tech test (Cel-Tech, supra, 20 Cal.4th at p. 187), and requires "that the public policy which is a predicate to a consumer unfair competition action under the `unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." (Bardin, supra, 136 Cal.App.4th at pp. 1260-1261; see Davis, supra, 179 Cal.App.4th at pp. 595-596; Gregory, supra, 104 Cal.App.4th at p. 854.) Under this test, plaintiff's claim fails for the reasons stated above with respect to competitor casesplaintiff failed to allege any violation or incipient violation of any statutory or regulatory provision, or any significant harm to competition.
*257 The test applied in a second line of cases is whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." (Bardin, supra, 136 Cal.App.4th at p. 1260; see Davis, supra, 179 Cal.App.4th at pp. 594-595; see also Ticconi v. Blue Shield of California Life & Health Ins. Co. (2008) 160 Cal.App.4th 528, 539 [72 Cal.Rptr.3d 888].) Plaintiff failed to allege, however, how the Association's refusal to sell to any particular person its membership mailing list would be "`"`immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"'" (Ticconi, supra, 160 Cal.App.4th at p. 539.) Again, at plaintiff's invitation, the trial court took judicial notice of the Association's Web site, which proclaimed that the Association's mission was "`to enhance community respect for the law and its related professions through financial and educational support programs.'" The Association reasonably contends that its refusal to facilitate a disbarred lawyer's efforts to solicit its members is consistent with its objective of enhancing community respect for the law.[4] The Association thus could refuse to deal with plaintiff without being immoral, unethical or unscrupulous. No facts were alleged tending to show that plaintiff was precluded by the Association from entering or competing in the market for mediation services, or from finding other avenues to advertise his services. Nor did plaintiff allege that the Association's conduct excluded other low-priced competitors from the market for mediation services. Accordingly, there was no allegation and no basis to infer from the complaint that consumers of mediation services have been substantially injured.
The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45(n)), and requires that "`(1) The consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.'" (Davis, supra, 179 Cal.App.4th at pp. 597-598; see Camacho v. Automobile Club of Southern California (2006) 142 Cal.App.4th 1394, 1403 [48 Cal.Rptr.3d 770].) As noted, there was no allegation and no basis to infer from the complaint that consumers have been substantially injured by the Association's conduct. The trial court properly sustained the Association's demurrer.

*258 DISPOSITION
The judgment is affirmed. The Association is to recover its costs on appeal.
Turner, P. J., and Kriegler, J., concurred.
NOTES
[1] All statutory references are to the Business and Professions Code.
[2] The issue of standing was raised for the first time in defendant's reply memorandum in the trial court.
[3] The decision in Freeman v. San Diego Assn. of Realtors, supra, 77 Cal.App.4th 171, arose under California state antitrust law, and thus it did not preclude (and its vitality is not affected by) a subsequent federal antitrust suit between the same parties relating to different conduct. (Freeman v. San Diego Assn. of Realtors (9th Cir. 2003) 322 F.3d 1133, 1142, fn. 8.)
[4] Drum contends that the reasons for his disbarment show that he had respect for the law. The documents he relies upon are not part of the record on appeal, however, nor is this an appropriate forum to examine the reasons for his disbarment.