Filed 3/26/14  RunflatAmerica v. Michelin No. America CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RUNFLATAMERICA, LLC, | B246418 c/w B249242 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC477901) |
| v. | |
| MICHELIN NORTH AMERICA, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County.  Richard E. Rico, Judge.  Affirmed.

Egan Avenatti, Michael J. Avenatti and Scott H. Sims for Plaintiff and Appellant.

Horvitz & Levy, Lisa Perrochet and Jason R. Litt; Yukevich/Cavenaugh, James J. Yukevich and Todd A. Cavanaugh for Defendant and Respondent Michelin North America, Inc.

Yoka & Smith, Walter M. Yoka, David T. McCann, and Jennifer Weinhold for Defendant and Respondent The Goodyear Tire & Rubber Company.

Clyde Snow & Sessions and Mark L. Smith for Defendants and Respondents Bridgestone Americas Tire Operations, LLC and Bridgestone Americas, Inc.

In this shareholder derivative action, plaintiff RunflatAmerica LLC (Runflat) appeals from the judgment dismissing its claims, brought on behalf of nominal defendant Runflat America Corporation (RAC), against defendants Michelin North America, Inc. (Michelin), Bridgestone Americas Tire Operations, LLC and Bridgestone Americas, Inc. (collectively, Bridgestone), and The Goodyear Tire and Rubber Company (Goodyear)[1] after the trial court sustained, without leave to amend, defendants' demurrers to Runflat's first amended complaint. Runflat also appeals from the order dismissing the action against RAC as the nominal defendant. We affirm both the judgment, and the order dismissing the action against RAC.

## BACKGROUND

**The parties**

RAC, the nominal defendant in this action, is a California corporation founded in 2000 that manufactures tire inserts for military use. Rick Cole (Cole) served as chief executive officer and president of RAC from 2000 to 2010. Runflat is a Nevada limited liability company that is wholly owned by Cole. Runflat owns in excess of 10 percent of the outstanding stock of RAC.

Michelin, Bridgestone, and Goodyear supply tires for military vehicles.

**Factual background**

In 2007, RAC developed an injected composite runflat tire insert for military use. A "runflat" insert is a product that enables a tire to continue functioning after it has been punctured. At the time RAC's product was developed, a company named Hutchinson Industries had been supplying the majority of runflat tire inserts for military use. Hutchinson's products were used with tires made by defendants.

RAC secured a contract to supply 12,000 runflat inserts for military vehicles manufactured by BAE Systems. The contract term was from June 2007 through January 2009. At the time the parties entered into the contract, BAE Systems advised RAC to

---

[1] Michelin, Bridgestone, and Goodyear are referred to collectively as defendants.

"remain able to supply spare parts through at least February 2009, if not for years to come, equaling or exceeding the 12,000 initial production amounts."

In July 2007, Michelin asked to inspect the RAC inserts that would be used with Michelin's tires because of concerns that the composite inserts would cause undue wear and tear on its tires. Michelin and RAC could not agree on nondisclosure terms, however, and the inspection never occurred.

RAC delivered the 12,000 composite runflat inserts to BAE Systems through January of 2009. RAC did not receive any reports of undue wear and tear on Michelin tires, nor did it receive any negative feedback from any manufacturer or military source regarding its composite inserts. When RAC's contract expired in January 2009, BAE Systems declined to renew the contract and instead contracted with RAC's competitor, Hutchinson, to supply runflat tire inserts for its vehicles. By November 2009, Hutchinson was supplying its own composite insert that plaintiff alleges was "strikingly similar" to its own product. After RAC's contract with BAE Systems expired, Cole was removed as president and CEO of RAC and was removed from RAC's board of directors.

In January 2010, Michelin disseminated a technical bulletin advising of "potential damage" from the use of "noncompliant devices" in wheel assemblies. The bulletin that warned that some types of "runflat and beadlock devices" that contain "[m]etal, hard plastic or other non-compliant materials" will create damage to the interior surfaces of tires and would void Michelin's warranty on its tires. The bulletin did not mention composite inserts, RAC, Hutchinson, or their respective runflat inserts. In the following months, Goodyear and Bridgestone disseminated similar bulletins. The Goodyear bulletin warned that runflat devices made of hard plastic, composite, metal, and other noncompliant materials "can" damage a tire's inner liner, and the Bridgestone bulletin warned that such devices "may" damage areas of the tire.

**The instant lawsuit**

On January 30, 2012, Runflat filed this shareholder derivative action nominally against RAC, to pursue claims against Michelin, Goodyear, and Bridgestone. The original complaint alleged that two RAC board members "conspired to terminate Cole as

3

RAC's President and Chief Executive Officer." The complaint further alleged that because the board members "remov[ed] Cole from his positions," any presuit demand asking the board to take action against defendants "would [have been] a useless and futile action, and [was] therefore excused." The complaint asserted causes of action for trade libel, intentional interference with contractual relations, and violations of the unfair competition law.

Defendants filed separate demurrers to the complaint, on the grounds that Runflat failed to allege that it had made a formal demand on RAC before filing a derivative action, as required by Corporations Code section 800, subdivision (b)(2), failed to allege facts sufficient to show that making such a demand would have been futile, and failed to allege that it had provided written notice of the proposed complaint to RAC's board before filing suit. In its opposition, Runflat argued that defendants lacked standing to assert defenses that only RAC could raise. Runflat further argued that a presuit demand would have been futile because RAC's board had conspired to oust Cole from the company.

The trial court sustained the demurrers with leave to amend, noting that Runflat had failed to assert specific facts as to each RAC director's inability to exercise his or her own business judgment and that defendants had standing to assert a defense based on Runflat's failure to allege a timely presuit demand or demand futility. The trial court rejected Runflat's general allegation that a demand on RAC's board was futile because the board had ousted Cole from the company, noting that "[a]ny animosity by two of the board members against Cole appear[ed] unrelated to the board of directors' interest in suing Defendants for wrongdoing against RAC."

Following the trial court's ruling, Runflat requested additional time to file an amended complaint. During that time, Runflat sent a letter and a proposed first amended complaint to RAC's board, demanding that RAC "immediately pursue claims" against defendants. The demand letter gave RAC's board ten days to respond. RAC'S board did not respond, and Runflat filed a first amended complaint alleging that it had served a

demand and copy of the proposed amended complaint on RAC. The first amended complaint did not allege that a demand on RAC's board would have been futile.

Defendants each filed demurrers to the first amended complaint, arguing that Runflat's demand letter to RAC's board was invalid because Corporations Code section 800 requires that the demand and copy of the proposed complaint be provided before the lawsuit is "instituted" and that a demand made after the initiation of the lawsuit but before the filing of an amended complaint did not satisfy the statutory requirement. The trial court sustained the demurrers on this ground. The trial court alternatively found that the first amended complaint failed to state claims for trade libel, interference with contractual relations, or unfair business practices and dismissed the action as to each of the defendants. The trial court subsequently dismissed the action as to nominal defendant RAC. This consolidated appeal followed.[2]

## DISCUSSION

### I. Standard of review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.) The legal sufficiency of the complaint is reviewed de novo. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790.)

---

[2] Runflat filed a separate appeal of the postjudgment order dismissing the action as to nominal defendant RAC. On our own motion, we consolidated the two appeals.

5

The trial court concluded that Runflat failed to state claims for trade libel, interference with contractual relations, and unfair trade practices. We agree and affirm the dismissal of Runflat's action on that basis. (*Orange Unified School Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750, 757 (*Orange Unified*) [appellate court will affirm a trial court's ruling sustaining a demurrer if it is correct on any theory].)

## II. Trade libel

Runflat contends the trial court erred by sustaining defendants' demurrers to its cause of action for trade libel. Trade libel is defined under California law as the publication of a false statement disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010.) "To constitute trade libel, a statement must be false." (*Ibid.*) When "a statement is ambiguous or susceptible of an innocent meaning, it is incumbent upon the plaintiff to plead the facts showing its defamatory meaning. [Citation.]" (*Id.* at p. 1011.)

Runflat's first amended complaint fails to allege facts demonstrating that defendants' technical bulletins are defamatory. The bulletins warned military contractors and the military that runflat devices made of composite, hard plastic, metal, or other non-compliant materials could cause damage to the interior surface of tires in which those devices were installed. The bulletins also advised recipients that damage caused by such devices would not be covered by defendants' respective tire warranties. Defendants' bulletins contain no reference to RAC or its product.

Runflat concedes that the bulletins do not refer to RAC or its products, but alleges that defendants' bulletins were "clearly an assault on RAC's business and its composite product" because "RAC was the *only* manufacturer of composite inserts at that time competing for [Department of Defense] business" and "there were no composite runflat inserts for use within the United States other than RAC's in existence at the time each of the bulletins was disseminated." This statement is plainly contradicted, however, by allegations elsewhere in the first amended complaint, which states that before any of

6

defendants' technical bulletins were disseminated, "Hutchinson supplied their own version of a composite runflat, strikingly similar to Runflat's" to other military contractors. The first amended complaint alleges no facts showing that defendants' technical bulletins were directed at RAC's products.

Runflat argues that there is no requirement under California law that a publication identify the product being disparaged in order to constitute trade libel but cites no authority to support this argument. *Davis v . Hearst* (1911) 160 Cal. 143, on which Runflat relies, is inapposite. The court in that case held that extrinsic evidence can be presented to show that an ambiguously worded defamatory statement was in fact directed at the plaintiff, and that a jury's finding that any person to whom the defamatory statement was published would understand that it applied to the plaintiff is sufficient to support a libel verdict. The amended complaint alleges no facts establishing that defendants' technical bulletins were directed at RAC or that recipients of the bulletins would construe it in such a manner. Plaintiff's argument that Michelin and Hutchinson shared "a close relationship" sufficient to support an inference that they conspired to disparage RAC's product is unsupported by any facts whatsoever.

The trial court did not err by concluding that Runflat failed to state a claim for trade libel.

### III.  Intentional interference with contract

Runflat contends the trial court erred by sustaining the demurrers to its cause of action for interference with contractual relations. To state a claim for intentional interference with contractual relations, a plaintiff must allege a valid contract between the plaintiff and a third party, the defendant's knowledge of this contract, intentional acts designed to induce the disruption of the contractual relationship, and actual disruption of the contractual relationship resulting in damage. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55.) The existence of a valid enforceable contract is a necessary element of such a claim. (*PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 601, disapproved on another ground by *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1159, fn. 11.)

7

Runflat's claim for intentional interference with contractual relationship fails as a matter of law because RAC had no enforceable contract at the time the alleged interference occurred. Runflat's first amended complaint alleges that the contract between RAC and BAE Systems expired in January 2009, more than a year before any of defendants' technical bulletins was disseminated. The trial court did not err by sustaining defendants' demurrers to this cause of action.

## IV. Violation of Unfair Competition Law

The unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL) makes actionable any "unlawful, unfair or fraudulent" business practice. Runflat's UCL claim is based on alleged "unfair" and "fraudulent" business practices by defendants.

### A. Unfair business practice

"[T]he test to determine whether a business practice is unfair differs depending on whether the plaintiff in a UCL case is a competitor of the defendant or a consumer. [Citations.]" (*Drum v. San Fernando Valley Bar Assn.* (2010) 182 Cal.App.4th 247, 253 (*Drum*).) In competitor cases, a business practice is "unfair" only if it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 187, fn. omitted.)

In consumer cases, some appellate courts have required that unfair business practice claims "be tethered to specific constitutional, statutory, or regulatory provisions. [Citations.]" (*Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1260-1261 (*Bardin*).) Other appellate courts have applied two different versions of a balancing test that requires the reviewing court to weigh the utility of the alleged unfair business practice against the injury it causes. Under the first version of this test, the court determines whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. [Citations.]" (*Id*. at p. 1260.) The second version of the balancing test draws on the

definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45(n)), and requires that "'"(1) The consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided."'" [Citations.]" (*Drum, supra*, 182 Cal.App.4th at pp. 254-257.)

Runflat's first amended complaint fails to state an unfair business practice claim under any of these tests. The first amended complaint fails to state a competitor claim for unfair business practices. It alleges in conclusory fashion that defendants "threatened an incipient violation of antitrust law" by precluding RAC "from maintaining a foothold in the composite runflat insert marketplace" against Hutchinson, its only competitor. It fails, however, to provide any factual support for this allegation or to explain how bulletins advising recipients that damage caused by noncompliant runflat devices were not covered by defendants' respective tire warranties violated any antitrust laws. (*Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 619 [facts supporting a UCL claim must be pled with reasonable particularity].) The first amended complaint does not allege facts showing how defendants' bulletins precluded RAC from competing with Hutchinson, as both companies manufactured composite runflat inserts that were the subject of the technical bulletins.

The first amended complaint fails to state a consumer claim for unfair business practices under the UCL. It is tethered to no specific statutory or regulatory provision. It contains no allegation that defendants engaged in any conduct that was "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" nor does it allege that any consumer was substantially injured by defendants' conduct.

### B. Fraudulent business practice

The first amended complaint also fails to set forth facts sufficient to state a cause of action for a fraudulent business practice under the UCL. To state a claim under this theory, Runflat was required to state "with reasonable particularity" that members of the public were "likely to be deceived" by defendants' conduct. (*Bardin, supra*, 163 Cal.App.4th at p. 1274.) The first amended complaint fails to allege how members of the

9

public were likely to be deceived, as none of defendants' technical bulletins refer to RAC or its products specifically. As the trial court noted in its written ruling, Michelin's bulletin does not even refer to "composite runflats" and the Goodyear and Bridgestone bulletins merely advise consumers that certain noncompliant inserts "may" cause damage to their tires. These allegations are insufficient to state a claim for a fraudulent business practice. (*Ibid.*)

The trial court did not err by sustaining defendants' demurrers to the cause of action for violation of the UCL.

## V. Leave to amend

Runflat fails to suggest with any specificity how it would further amend the first amended complaint to correct the defects noted above. The burden of proving a reasonable possibility of amending the complaint to state a cause of action "is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The trial court therefore did not abuse its discretion by sustaining the demurrers without leave to amend.

## VI. Corporations Code section 800

The parties argue at some length in their respective appellate briefs as to whether Runflat lacked standing to pursue a shareholder derivative action on behalf of RAC because it failed to make a timely demand on RAC's board before commencing this action, as required by Corporations Code section 800, subdivision (b),[3] and whether the demand letter Runflat delivered to RAC's board 10 days before filing the operative first amended complaint satisfied the statutory demand requirement. Neither side has presented any persuasive authority in support of their respective positions.

---

[3] Corporations Code section 800, subdivision (b) provides in relevant part: "No action may be instituted or maintained in right of any domestic or foreign corporation by any holder of shares . . . of the corporation unless . . . [t]he plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and alleges further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file."

10

Defendants' argument that a demand is timely under Corporations Code section 800, subdivision (b) only if made before the filing of the initial complaint appears to conflict with the plain language of the statute, which states that "[n]o action may be instituted *or maintained*" unless such a demand has been made on the corporation or its board. (Corp. Code, § 800, subd. (b), italics added.) The cases cited by defendants, *Vaughn v. LJ Internat., Inc.* (2009) 174 Cal.App.4th 213 and *Bader v. Anderson* (2009) 179 Cal.App.4th 775, are inapposite. *Vaughn* concerned a shareholder presuit demand requirement not under California law, but under the British Virgin Island Business Companies Act of 2004, and the shareholder plaintiff in *Bader* made no presuit demand on the board and failed to allege that making such a demand would have been futile. Neither of those cases involved the circumstance presented here -- a demand presented to the nominal corporate defendant's board after the action was commenced but before the filing of the operative first amended complaint.

Runflat's reliance on *Braddock v. Zimmerman* (Del. 2006) 906 A.2d 776 as authority for its position is similarly misplaced. In *Braddock*, the Delaware Supreme Court did not hold that a demand is timely if made after the initial complaint has been filed so long as it is made before the filing of the operative amended complaint. Rather, the court in *Braddock* addressed a much narrower issue -- the circumstances under which a plaintiff is required to reestablish the basis for demand futility when filing an amended complaint in a derivative action. The Delaware Supreme Court in *Braddock* concluded that the plaintiff does not have to reestablish the basis for demand futility at the time of filing an amended complaint except when there has been a change in the composition of the board of directors, and then only "as to derivative claims in the amended complaint that are not already validly in litigation." (*Id*. at p. 786, fn. omitted.)

We need not address the parties' arguments, in any event, because Runflat has failed to state a cause of action under any of the theories alleged in the first amended complaint, and we affirm the trial court's ruling sustaining defendants' demurrers and dismissing the action on that basis. (*Orange Unified, supra*, 54 Cal.App.4th at p. 757.)

11

**DISPOSITION**

The judgment is affirmed as is the order dismissing the action against nominal defendant RAC. Defendants are awarded their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.*
FERNS

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12