Filed 6/15/21  Dummer v. San Francisco Public Utilities Com. CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TIMOTHY DUMMER,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>SAN FRANCISCO PUBLIC UTILITIES COMMISSION et al.,<br><br>        Defendants and Respondents. | A160789<br><br>(Alameda County<br>Super. Ct. No. HG19041020) |

Timothy Dummer filed a verified petition for writ of mandate against various public entities seeking to have the Calaveras Reservoir opened to the public for fishing.  He appeals from judgments entered in favor of the Department of Water Resources (Department), the California State Water Resources Control Board (Board), and the Department of Fish and Wildlife (Fish & Wildlife) (collectively respondents) after the trial court sustained their demurrers to the petition with leave to amend.  Dummer, who did not amend his petition, argues he sufficiently alleged that respondents had a clear and present duty under the law to facilitate the opening of the Calaveras Reservoir to public fishing.  We disagree and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The petition alleges as follows.  Dummer is a licensed fisherman and for years has desired to fish in the Calaveras Reservoir.  The reservoir is

1

frequented by naturally occurring fish and is not located on privately owned land that is primarily agricultural or residential in nature, yet it has been closed to the public for fishing and recreation for many years. The San Francisco Public Utilities Commission (SFPUC) manages the reservoir on behalf of its owner, the City and County of San Francisco (San Francisco), and claims the reservoir cannot be opened to fishing because it provides water for drinking and domestic use.

The petition asserts several claims against SFPUC, San Francisco, and respondents.[1] At issue in this appeal are Dummer's claims (1) against the Department and the Board for violation of California Code of Regulations,[2] title 23, sections 303 and 781; (2) against Fish & Wildlife for failure to enforce Fish and Game Code section 5943; and (3) against all respondents for violation of the "public trust doctrine."

According to the petition, the Department and the Board violated their duties under section 781, which mandates that all permits for storage of water on a stream naturally frequented by fish require the permittee to accord the public a reasonable right of access for fishing. Based on his allegation that the Department and the Board "recently (presumably)" issued permits to SFPUC for the Calaveras Dam replacement project, which increased the impoundment of water in the Calaveras Reservoir by 300 percent, Dummer contends the Department and the Board were required to

---

[1]     The petition also named the State of California and the Sheriff's offices for Alameda and Santa Clara Counties, but these entities were dismissed. The lawsuit is currently proceeding against SFPUC and San Francisco in the trial court.

[2]     All further section references are to title 23 of the California Code of Regulations unless stated otherwise.

2

ensure SFPUC and San Francisco's compliance with section 781's public access requirements.

The petition further alleges that the Department and the Board violated their duties under section 303 to obtain evidence of SFPUC's water rights before approving the construction or enlargement of the Calaveras Dam. According to Dummer, Calaveras Reservoir is fed mainly by the Arroyo Hondo and Calaveras Creek, but SFPUC only provided evidence of its pre-1914 water rights for Calaveras Creek and "provided **no** evidence of water rights for the Arroyo Hondo." (Original emphasis.) Dummer further alleges that any pre-1914 water rights SFPUC and San Francisco had for Calaveras Creek "should have expired" either in 1918 after the "first dam failure because the dam was not repaired within 5 years," or in 2011 after the "second dam failure" and non-repair within five years. Dummer alleges the Department and the Board "presumably issued permits to SFPUC for the Calaveras Dam replacement project, and authorized the commencement of construction without following the requirements of [section 303]." Dummer seeks a writ of mandate ordering the Department and the Board to "withdraw all permits previously issued regarding Calaveras Dam or Reservoir" until SFPUC's water rights are confirmed or verified.

Finally, the petition alleges that Fish & Wildlife has a duty to enforce Fish and Game Code section 5943, which requires dam owners to accord public right of access to waters impounded by the dam for the purposes of fishing.

Respondents each demurred to the petition, arguing that Dummer failed to allege sufficient facts to support a mandatory duty requiring them to compel SFPUC to open the Calaveras Reservoir to fishing. On March 5, 2020, the trial court heard argument from the parties and issued orders

3

sustaining the demurrers with 30 days' leave to amend. The court ruled that although the Board has a mandatory duty under section 781 when it issues a permit for storage of water, the petition failed to sufficiently allege that the Board issued a permit in the instant case. Rather, the petition "speculates that [the Board] '(presumably) recently' issued a permit to San Francisco." Citing *Millview County Water Dist. v. State Water Resources Control Bd.* (2014) 229 Cal.App.4th 879 (*Millview*), the court also rejected Dummer's claim that San Francisco's legacy appropriation rights had lapsed during the dam reconstruction project.

The trial court further ruled that while the Department has mandatory duties under section 303, subdivisions (a) and (d), with regard to approving the commencement of construction or enlargement of a dam or reservoir, the petition failed to allege that the Department had issued a written approval for the Calaveras Dam replacement project without receiving evidence of San Francisco's water rights, or that the Department had failed to obtain an opinion from the Board's staff as required by section 303, subdivision (d).

Finally, the trial court ruled that the petition failed to allege a mandatory duty on the part of Fish & Wildlife to enforce Fish and Game Code section 5943, as the agency's "choice of what cases to bring and against which violators using a public entity's limited resources is generally left to the discretion of public officials."

Shortly after the trial court issued its order, Dummer filed a "Request for Statement of the Specific Grounds for Sustaining Demurrers [under Code of Civil Procedure section] 472d." The trial court did not rule on this request.

Dummer did not file an amended petition. In June 2020, respondents applied ex parte for dismissal of the petition with prejudice. The application was granted, and Dummer timely appealed.

4

"A writ of mandate will lie to 'compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station' (Code Civ. Proc., § 1085) 'upon the verified petition of the party beneficially interested,' in cases 'where there is not a plain, speedy, and adequate remedy, in the ordinary course of law.' (Code Civ. Proc., § 1086.)" (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 490–491.) "The petitioner must demonstrate the public official or entity had a ministerial duty to perform, and the petitioner had a clear and beneficial right to performance." (*AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 700 (*AIDS Healthcare*).) " 'A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his [or her] own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists.' " (*Ibid.*) "[A]bsent a clear duty imposed by law . . . , mandamus is not a proper vehicle for resolution for the asserted grievance." (*Shamsian v. Department of Conservation* (2006) 136 Cal.App.4th 621, 640.)

On appeal from a dismissal entered after an order sustaining a demurrer to a petition for writ of mandate, our review is de novo. (*Jones v. Omnitrans* (2004) 125 Cal.App.4th 273, 277.) "We give the petition a reasonable interpretation, reading it as a whole and viewing its parts in context. We deem to be true all material facts that were properly pled, as well as all facts that may be inferred from those expressly alleged." (*Ibid.*) We do not assume the truth of contentions, deductions, or conclusions of law. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 (*City of Dinuba*).) Additionally, where a plaintiff is given the opportunity to amend

but elects not to, the judgment must be affirmed if the unamended complaint is objectionable on any of the grounds raised by the demurrer. (*Soliz v. Williams* (1999) 74 Cal.App.4th 577, 585.) " '[S]trict construction of the complaint is required and it must be presumed that the plaintiff has stated as strong a case as he can.' " (*Drum v. San Fernando Valley Bar Assn.* (2010) 182 Cal.App.4th 247, 251 (*Drum*).)

We begin our analysis with a brief summary of the relevant law on water and fishing rights in California. "Ownership of California's water is vested generally in the state's residents, but individuals and entities can acquire 'water rights,' the right to divert water from its natural course for public or private use." (*Millview*, *supra*, 229 Cal.App.4th at p. 888.) "California operates under a 'dual' or hybrid system of water rights which recognizes both doctrines of riparian rights and appropriation rights." (*United States v. State Water Resources Control Bd.* (1986) 182 Cal.App.3d 82, 101.) Since 1914, "a statutory scheme has provided the exclusive method of acquiring appropriation rights. [Citation.] Thus, an application for appropriative rights must now be made to the [Board] for a permit authorizing construction of necessary water works and the taking and use of a specified quantity of water." (*Id.* at p. 102.)

Fish and Game Code section 5943, subdivision (a), applies to dam owners and states: "The owner of a dam shall accord to the public for the purpose of fishing, the right of access to the waters impounded by the dam during the open season for the taking of fish in the stream or river, subject to the regulations of the [Fish and Game Commission]."

Section 781 pertains to the Board's issuance of appropriation permits and related fishing rights. It provides: "In compliance with Fish and Game Code Section 5943, all permits for storage of water on a stream naturally

6

frequented by fish shall require the permittee to accord to the public, for the purpose of fishing, reasonable right of access to the waters impounded by the dam under the permit during the open season for the taking of fish, subject to the regulations of the Fish and Game Commission and, for domestic water supply reservoirs, subject to applicable public health requirements contained in Title 17 of the California Administrative Code."

In this case, the petition does not squarely allege that the Board issued an appropriation permit to SFPUC; rather, it states that the Department and the Board "presumably" did so. This allegation is speculative and akin to one made "on information and belief." A petition for writ of mandate, however, must be verified (Code Civ. Proc., § 1086), and a verification cannot be based on information and belief. (*Star Motor Imports, Inc. v. Superior Court* (1979) 88 Cal.App.3d 201, 204.)[3] Because Dummer was given leave to state nonspeculative allegations that the Board issued an appropriation permit to SFPUC, his decision not to amend suggests he had already stated as strong a case as he could. (*Drum*, *supra*, 182 Cal.App.4th at p. 251.)

Dummer argues it is immaterial that he did not allege the actual issuance of an appropriation permit to SFPUC. We disagree. The petition acknowledges that San Francisco's appropriative rights to divert water and store it in the Calaveras Reservoir predated the 1914 statutory scheme. "Appropriative rights obtained before 1914 are not subject to the state's statutory scheme for acquiring appropriative water rights." (*Orange Cove*

---

[3]    We note that a trial court has discretion to issue a writ of mandate based on a verification made on information and belief where the petitioner has provided a sufficient record to enable the court to conduct a complete review of the proceedings as necessary to grant relief. (See *Pacific Gas & Electric Co. v. Superior Court* (1983) 145 Cal.App.3d 253, 255, fn. 1, disapproved on other grounds in *Hubbard v. Brown* (1990) 50 Cal.3d 189, 197.) The criteria for this exception are not met here.

*Irrigation Dist. v. Los Molinos Mutual Water Co.* (2018) 30 Cal.App.5th 1, 9.)
Dummer attempts to circumvent this legal conclusion by alleging that San
Francisco's pre-1914 appropriative rights "expired" in 1918 or 2011, but we
are not required to accept the truth of his legal conclusions. (*City of Dinuba*,
*supra*, 41 Cal.4th at p. 865.) While we assume the truth of the factual
allegations that San Francisco failed to repair dam failures within five years
of 1918 and 2011, it does not follow that San Francisco's water rights were
lost or reverted to the public. Water Code section 1241 provides that if a
person entitled to the use of water fails to beneficially use the claimed water
for the purpose for which it was appropriated for a period of five years, that
unused water "*may* revert to the public . . . upon a finding by the board
following notice to the permittee. . . ." (Italics added.) Reversion is neither
automatic nor mandated as a ministerial duty of the Board. (See *United
States v. State Water Resources Control Bd.*, *supra*, 182 Cal.App.3d at p. 102
[Board "may" revoke permit if permit holder fails to apply water to beneficial
purpose].)

Furthermore, *Millview* rejected the notion that forfeiture of water
rights occurs " 'in the abstract' " in the absence of a competing claim.
(*Millview*, *supra*, 229 Cal.App.4th at pp. 900–903.) "What is required for
forfeiture is not merely nonuse by the rights holder of its full appropriation,
but also 'the presence of a competing claim' to the unused water by a rival
diverter who is prepared to use, or is using, the surplus. . . . If no other
beneficial use for the surplus water has been asserted, there is no reason to
find a forfeiture." (*Id.* at pp. 900–901.) "As a result, a California rights
holder whose water use falls below the full appropriation for five years or
more may nonetheless resume full use at any time if no conflicting claim has
been asserted in the meantime." (*Id.* at p. 903.) The petition here does not

8

allege that San Francisco never resumed full beneficial use of its right to divert and store water in the Calaveras Reservoir or that a rival diverter has made a competing claim. Because Dummer was given leave to allege San Francisco's loss of pre-1914 appropriative rights, his decision not to do so suggests he had already stated as strong a case as he could. (*Drum*, *supra*, 182 Cal.App.4th at p. 251.)

In any event, even if we presumed the post-1914 issuance of an appropriation permit to San Francisco, the petition fails to allege the existence of a mandatory duty on the part of the Board to revoke that permit. Dummer's reliance on Water Code section 1410 is misplaced, as the statute provides that "[a] permit *may* be revoked" (italics added) upon request of the permittee or if the Board finds that cause exists to revoke after conducting a hearing on a petition for extension of time to complete a project and apply water to a beneficial use, or after the Board conducts an investigation and gives written notice of a proposed revocation. (Wat. Code, § 1410, subd. (b).) Neither Water Code section 1410 nor section 781 contains any language supporting the existence of a clear and ministerial duty on the part of the Board to automatically revoke an appropriation permit upon the permittee's failure to allow for public fishing.

We next turn to section 303, subdivision (a), which provides that "[t]he [D]epartment will not issue a written approval to commence construction or enlargement of a dam or reservoir until the applicant or owner demonstrates evidence of adequate water rights in accordance with the requirements of this section."[4] Dummer contends the trial court overlooked the petition's

---

[4]     Dummer does not challenge the trial court's ruling that the petition failed to state facts supporting the Department's violation of section 303, subdivision (d), which requires the Department to "obtain a written

9

allegation that "the SFPUC has provided **no** evidence of water rights for the Arroyo Hondo." (Original emphasis.) Again however, the petition merely speculates that authorization to commence construction or enlargement of a dam was given by the Department to SFPUC and San Francisco. We assume from Dummer's decision not to amend that he could not make a nonspeculative allegation in a verified petition. (*Drum*, *supra*, 182 Cal.App.4th at p. 251.)

But even if we assume the petition sufficiently alleged the Department's violation of section 303, subdivision (a), Dummer fails to allege facts that would support a clear and ministerial duty on the part of the Department to withdraw its prior approval of the Calaveras Dam replacement project. Of note, the petition does not allege that San Francisco *lacks* appropriative rights to divert waters from the Arroyo Hondo, only that SFPUC failed to provide evidence of it prior to the Department's approval of the dam replacement project. It does not follow from the Department's violation of the evidence-gathering requirement of section 303, subdivision (a), that it had a duty to automatically withdraw prior approval of the Calaveras Dam replacement project.

We now turn to the claim against Fish & Wildlife. The petition alleges the agency has a clear and present duty to enforce Fish and Game Code section 5943, subdivision (a). As the trial court observed however, Fish & Wildlife has enforcement authority for the provisions of the Fish and Game Code (Fish & G. Code, § 702), and "[m]andamus does not lie to compel a public agency to exercise discretionary powers in a particular manner, only to compel it to exercise its discretion in some manner." (*AIDS Healthcare*,

---

statement from the staff of the [Board] stating whether the water right is adequate for the proposed dam and reservoir."

10

*supra*, 197 Cal.App.4th at pp. 700–701.) That discretion includes the choice of which defendants to prosecute, as well as the decision whether to prosecute at all. (*People v. Superior Court (Lyons Buick-Opel-GMC, Inc.)* (1977) 70 Cal.App.3d 341, 344.)

Dummer's assertion to the contrary based on *State of California v. San Luis Obispo Sportsman's Assn.* (1978) 22 Cal.3d 440 (*State of California*) is unavailing. That case did not involve mandamus proceedings, nor did it hold that Fish & Wildlife has a nondiscretionary duty to prosecute violations of Fish and Game Code section 5943. Dummer's citation to *EPIC v. California Department of Forestry and Fire Protection* (2008) 44 Cal.4th 459, likewise provides no support for his claim of a ministerial duty on the part of Fish & Wildlife. That case involved "interlocking obligations" between the agency and private persons where a streambed alteration agreement under former Fish and Game Code section 1603 is required. (*EPIC*, at p. 518.) No streambed alteration agreement is at issue here.

Dummer's reliance on the public trust doctrine is also unavailing. The public trust doctrine is an ancient legal principle that a sovereign owns its navigable waters, tidelands, and submerged lands of navigable waters as trustee of a public trust for the benefit of the people. (*National Audubon Society v. Superior Court* (1983) 33 Cal.3d 419, 434.) The public trust analysis "begins and ends with whether the challenged activity harms a navigable waterway and thereby violates the public trust." (*Environmental Law Foundation v. State Water Resources Control Bd.* (2018) 26 Cal.App.5th 844, 859–860.) The "dispositive issue is not the source of the activity, or whether the water that is diverted or extracted is itself subject to the public trust, but whether the challenged activity allegedly harms a navigable waterway." (*Id.* at p. 860.) Because Dummer's petition does not allege any

11

harm to a navigable waterway, it does not implicate any mandatory duty on the part of respondents under the public trust doctrine.

Dummer contends the petition "has already been deemed otherwise meritorious" because SFPUC and San Francisco told him in August 2020 that " 'no controversy' " remains and that Calaveras Reservoir will be opened to the public. Dummer improperly relies for this contention on an exhibit to his appellate brief that was not contained in the appellate record. (See Cal. Rules of Court, rule 8.204(d).) More importantly, a demurrer tests the pleading alone, not extrinsic matters which do not appear on the face of the pleading or cannot be properly inferred from its allegations. (*Lafferty v. Wells Fargo Bank* (2013) 213 Cal.App.4th 545, 566.) Even if the extrinsic communication from SFPUC were properly before us, SFPUC's statement of willingness to open Calaveras Reservoir to public fishing does not demonstrate that respondents had a clear and ministerial duty under the law to undertake acts to facilitate it.

Finally, we reject Dummer's contention that the trial court prejudicially erred by failing to provide a more detailed statement of the grounds for sustaining respondents' demurrers. Code of Civil Procedure section 472d requires a trial court to include in its decision or order sustaining a demurer "a statement of the specific ground or grounds upon which the decision or order is based." There are eight statutory grounds for a demurrer, and the failure to state facts sufficient to constitute a cause of action is one of them. (*Stevenson v. San Francisco Housing Authority* (1994) 24 Cal.App.4th 269, 275; see Code Civ. Proc., § 430.10, subd. (e).) Here, the trial court's order stated that the petition failed to allege facts establishing a mandatory duty on the part of respondents that entitles Dummer to mandamus relief. That is, the petition failed to allege facts sufficient to

12

constitute a cause of action. This was all that was required under Code of Civil Procedure section 472d, and Dummer was not entitled to a more detailed recitation of the court's reasoning.[5] (*Stevenson*, at p. 275.)

Dummer claims he could not meaningfully amend his petition because he did not know whether the demurrer was sustained on the grounds of uncertainty or failure to state a claim. We are not persuaded. Uncertainty under Code of Civil Procedure section 430.10, subdivision (f), was not specified as a ground in the notice of the demurrers or as a basis for decision in the trial court's order. Furthermore, Dummer concedes on appeal that the trial court gave him specific instructions at the March 5 hearing on how to amend his petition. Although he now argues the suggested changes were "unnecessary" and "make[] little or no difference to Dummer's complaint," the record simply does not support Dummer's contention that he was prevented in any way from amending his petition to address the deficiencies outlined by the trial court.

## DISPOSITION

The judgment is affirmed, with costs to respondents.

---

[5] That said, the trial court went above and beyond what Code of Civil Procedure section 472d requires by providing a detailed analysis of the basis for its decision as to each respondent.

13

_____
Fujisaki, Acting P.J.

WE CONCUR:


_____
Petrou, J.


_____
Jackson, J.

*Dummer v. San Francisco Public Utilities Commission/A160789*

14